IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**MATTIE BRIGHT, as Guardian and next**                                        **PLAINTIFF**
**of kin for her daughter, Jane Doe**

**V.**                                                                           **NO. 3:16-CV-197-DMB-RP**

**TUNICA COUNTY SCHOOL DISTRICT,**
**et al.**                                                                         **DEFENDANTS**

## ORDER

This civil rights action is before the Court on the motions to dismiss or, in the alternative, for judgment on the pleadings filed by Bernard Stephen Chandler and Tunica County School District. Doc. #43; Doc. #45; Doc. #47.

## I
## Procedural History

On August 24, 2016, Mattie Bright filed an amended complaint on behalf of her daughter, Jane Doe, in the Circuit Court of Tunica County, Mississippi. Doc. #2. The amended complaint, which asserts claims under Title IX and 42 U.S.C. § 1983, names as defendants (1) Tunica County School District; (2) Bernard Stephen Chandler, the Superintendent of the District, in his official and individual capacities; (3) Milton Hardrict, the principal at Coahoma Agricultural High School, in his official and individual capacities; (4) Stanley Ellis, the Assistant Superintendent of the District and the District's Title IX Coordinator, in his official and individual capacities; and (5) Brittany Brown, a teacher in the District, in her official and individual capacities. The amended complaint alleges that the various defendants are liable for a sexual assault and harassment Jane Doe suffered while a student in the District.

Ellis and the District filed answers to the state court complaint on September 12, 2016.

Doc. #5; Doc. #6. Hardrict filed his answer on October 20, 2016, and Chandler filed his on December 26, 2016. Doc. #16; Doc. #26. Both Hardrict and the District subsequently amended their answers on January 12, 2017, and January 15, 2017, respectively. Doc. #27; Doc. #31.

On January 12, 2017, Ellis filed a "Motion of Defendant Stanley Ellis for Qualified Immunity, to Dismiss, and for Summary Judgment." Doc. #28. Three days later, on January 15, 2017, Hardrict filed a motion seeking identical relief. Doc. #32.

On January 26, 2017, Bright docketed a response to Ellis' motion for summary judgment, which was in substance and by title a motion for Rule 56(d) relief, along with a memorandum supporting her Rule 56(d) request. Doc. #34; Doc. #35. Following a notice of correction from the Clerk of the Court, Bright re-docketed her response as a motion for extension but did not file a supporting memorandum. Doc. #36. After receiving a second notice of correction, Bright filed a third motion for Rule 56(d) relief, again with no supporting memorandum. Doc. #38.

On February 9, 2017, Ellis and Hardrict filed a "Combined Response" to Bright's three motions. Doc. #39. The next day, Ellis and Hardrict filed a "corrected" response. Doc. #40. Bright replied to the combined response on February 21, 2017. Doc. #42.

On February 22, 2017, Chandler and the District filed a combined motion to dismiss "and/or" for judgment on the pleadings. Doc. #43. The following day, Chandler and the District filed separate "amended" motions seeking the same relief. Doc. #45; Doc. #47. Bright filed a combined response to the amended motions to dismiss on March 30, 2017. Doc. #51. On April 6, 2017, the District and Chandler filed motions to extend the deadlines to reply to Bright's response. Doc. #53; Doc. #54. Two days later, on April 8, 2017, before this Court could rule on the motions for extension, both Chandler and the District replied in support of their respective motions. Doc. #55; Doc. #56.

2

On April 10, 2017, Chandler filed a motion for summary judgment. Doc. #57. About two weeks later, on April 25, 2016, this Court issued an order denying the motions for extension as moot. Doc. #59. Additionally, the order, which interpreted the first two Rule 56(d) motions as having been mooted by the third, denied the third motion for Rule 56(d) relief as improperly supported. *Id*. Bright filed a Rule 56(d) motion two days later seeking discovery to respond to Chandler's motion. Doc. # 63.

On July 19, 2017, this Court denied the Rule 56(d) motion related to Chandler's motion for summary judgment. Doc. #68. Approximately two weeks later, on August 4, 2017, Bright responded in opposition to Chandler's motion for summary judgment. Doc. #71. Chandler replied in support of his motion on August 6, 2017.

## II
## Relevant Standards

Chandler and the District have moved to dismiss "all claims in this matter alleged as arising under 42 U.S.C. § 1983 pursuant to Rule 12(b)(6) and/or Rule 12(c) of the Federal Rules of Civil Procedure." Doc. #46; Doc. 48.

As a general matter, 12(b)(6) relief is unavailable where a moving party has filed a responsive pleading. *Young v. City of Houston*, 599 F. App'x 553, 554 (5th Cir. 2015). Accordingly, when, as here, a moving party files a post-answer motion under both Rule 12(b)(6) and Rule 12(c), the proper course is to treat the motion as made under Rule 12(c). *See Dorward v. Ramirez*, No. 3:09-cv-18, 2009 WL 2777880, at *3 n.4 (N.D. Tex. Aug. 28, 2009) ("Although Waste Management states that it moves to dismiss under both Rule 12(b)(6) and Rule 12(c), the court will construe the motion as made under Rule 12(c) because it was filed after Waste Management filed an answer.").

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard

as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). Under Rule 12(b)(6), "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). Under this standard, a court must "accept all well-pleaded facts as true." *New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 199–200 (5th Cir. 2016) (internal quotation mark omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do so." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 544) (internal citations omitted).

### III
### Factual Allegations

During the 2014–2015 school year, Doe, who was then fifteen years old, was enrolled as a freshman at Rosa Fort High School in the Tunica County School District. Doc. #2 at ¶¶ 8, 31.

4

In the afternoon of November 3, 2014, Doe, who received Special Education Services at Rosa Fort, was in the classroom of Brittany Brown, a teacher at the school. *Id*. at ¶¶ 31–32.

### A. The Assault of Doe

At approximately 1:00 p.m., Antonio Stubbs, a male student, came to Brown's classroom and requested that Doe be allowed out of the classroom for the purpose of accompanying him to "another area of the school." *Id*. at ¶ 33. Although Stubbs presented no authorization for this request, Doe was allowed to leave the classroom. *Id*. at ¶ 34–35.

Stubbs took Doe down an unmonitored hallway and into a computer lab where she was sexually assaulted by three male students. *Id*. at ¶ 36. Immediately after the assault, Doe informed Milton Hardrict, the principal,[1] of the attack. *Id*. at ¶ 37. Hardrict interviewed Doe and then called her parents to the school. *Id*. at ¶ 38.

After speaking with Doe's parents, Hardrict directed the custodial staff to clean the area in the computer lab where the sexual assault had occurred. *Id*. at ¶ 39. Once the computer lab was cleaned, Hardrict reported the sexual assault to the Tunica County Sheriff's Department and to the County's emergency medical services. *Id*. at ¶¶ 40–41.

Upon arriving at the school, the Sheriff's Department conducted an investigation, collected evidence, and took the three attackers into custody. *Id*. at ¶ 41. Doe was taken to a hospital where a rape kit performed resulted in "medical findings [which] were consistent with rape." *Id*. at ¶ 42.

### B. District's Initial Response

Approximately two days after the attack, all three attackers returned to school. *Id*. at ¶ 43. One of the attackers rode the bus with Doe. *Id*. Over the ensuing three months, the attackers

---

[1] In this litigation, the defendants have disputed that Hardrict served as principal. However, for the purpose of resolving a motion for judgment on the pleadings, the Court must take all allegations as true.

continued to attend school with Doe. *Id*. at ¶ 50. During this time, Doe continued to ride the bus with one of the attackers. *Id*. at ¶ 50.

After the day of the attack, District officials "conducted virtually no investigation" of the assault and never interviewed Doe or her parents. *Id*. at ¶ 45. Hardrict, despite receiving unsolicited information about the attack from students, kept no notes of such reports and declined to conduct an investigation on the information reported. *Id*. at ¶¶ 47–48. Stanley Ellis, the District's Title IX Coordinator, undertook no investigation at all. *Id*. at ¶ 49.

### C. Media Exposure of Assault and Subsequent Harassment of Doe

In late February 2015, local media began reporting on the assault. *Id*. at ¶ 51. Following the news reports, the three attackers were transferred to an "alternative school" located on the same campus as Rosa Fort. *Id*. For the remainder of the school year, the attackers and their friends harassed and intimidated Doe on school grounds. *Id*. at ¶ 52. Such harassment included following Doe "closely in hallways and on campus calling her a slut, whore, [and] liar." *Id*. at ¶ 53.

At an unspecified time, other students began sexually harassing Doe on the internet and in school. *Id*. at ¶ 55. This harassment included students posting "vulgar, demeaning, derogatory and harassing messages to and about Plaintiff and her family on Facebook." *Id*. at ¶ 56. These messages questioned Doe's "integrity, her sexuality and sexual behavior, and her character for bringing the sexual violence to the attention of school officials." *Id*. at ¶ 57.

Doe's parents reported the harassment to school officials on "numerous occasions." *Id*. at ¶ 63. On "multiple occasions," Doe's parents asked Hardrict "to make changes to ensure that the harassment of [Doe] would stop, that she would have a safe education environment, and that her education could continue without disruption." *Id*. Despite these requests, the officials,

6

including Hardrict, Superintendent Chandler, and Ellis, took no action other than telling Doe to document and report future incidents of harassment. *Id*. at ¶ 64. Doe continued to document and report ongoing problems but school officials took no remedial action. *Id*. at ¶ 65. As a result of the ongoing harassment, Doe's grades dropped and she began to suffer anxiety and depression. *Id*. at ¶¶ 72–74.

Doe's attackers returned with Doe to Rosa Fort for the 2015-2016 school year. *Id*. at ¶ 76. For the first two weeks of that academic year, Doe shared classes with two of her attackers. *Id*. at ¶ 77. The class schedules were changed only after Doe's mother complained to school officials. *Id*.

## IV
## Analysis

Bright's complaint asserts four counts: (1) "Violation of Title IX as to Defendant Tunica County School District," subtitled "The School's Deliberate Indifference to Alleged Sexual Harassment" (Count I); (2) "Violation of Title IX as to Defendant Tunica County School District," subtitled "Retaliation by Withholding Protections Otherwise Conferred by Title IX" (Count II); (3) "1983 Violation as to Defendants Tunica County School District, Chandler, Hardrict, Ellis and Brown" (Count III); and (4) "*Monell* Liability for Failure to Train and Supervise as to Response to Sexual Assault as to Defendant Tunica County School District (42 U.S.C. § 1983)" (Count IV). The District's motion to dismiss seeks dismissal of Counts III and IV. Chandler's motion to dismiss seeks dismissal of Count III.[2]

Both Count III and Count IV are brought through the vehicle of 42 U.S.C. § 1983. Section 1983 authorizes suits for damages against any "person who, under color of any statute,

---

[2] As mentioned above, the parties filed a joint motion before filing their respective "amended" individual motions. Doc. #43. The Court deems the joint motion, which also seeks dismissal of the § 1983 claims, to have been mooted by the filings of the amended motions.

7

ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." "There are three elements to establish liability through a Section 1983 action. There must be (1) a deprivation of a right secured by federal law[,] (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (internal footnote omitted).

### A. Deprivation of Right Secured by Federal Law

In Count III, Bright's amended complaint alleges that "[u]nder the Fourteenth Amendment, [Doe] had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws." Doc. #2 at ¶ 96. Count IV alleges that "[u]nder the Equal Protection Clause of the Fourteenth Amendment, [Doe] had the right to equal access to an educational environment free from harassment and discrimination." *Id.* at ¶ 107. Bright alleges that Chandler and the District violated these rights.

In their motions to dismiss, Chandler and the District argue that the Fourteenth Amendment claims asserted in the amended complaint should be "analyzed solely under the substantive due process component of the Fourteenth Amendment" and that "Plaintiff has not alleged a cognizable constitutional violation." Doc. #46 at 2; Doc. #48 at 2. In response, Bright "acknowledges that she erroneously referred to her right to equal protection instead of her right to due process" but asserts that she states a claim for violation of Doe's substantive due process rights. Doc. #51 at 2; Doc. #52 at 2. To this end, Bright asserts that "the Amended Complaint does *not* seek relief for the sexual assault. Rather, it is the aftermath created by ... Defendants that is the subject of the Amended Complaint." Doc. #51 at 4; Doc. #52 at 4. Specifically,

8

Bright's amended complaint and responses to the motion to dismiss make clear that she is asserting claims for violations of Doe's "substantive due process liberty interest in personal security and bodily integrity." Doc. #51 at 3; Doc. #52 at 3.[3]

There can be no dispute that the Fourteenth Amendment includes as a liberty interest "a right to be free from ... unjustified intrusions on personal security."[4] *Ingraham v. Wright*, 430 U.S. 651, 673 (1977). This right encompasses a "freedom from bodily restraint and punishment." *Id.* at 674. Accordingly, the Fifth Circuit has made clear that "schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994).

While the Fifth Circuit appears to have never expressly addressed whether verbal abuse in the school context may violate a student's interest of personal security, it noted in a prisoner civil rights action that "[m]ere allegations of verbal abuse do not present actionable claims under § 1983." *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). In accordance with this rule, "[v]erbal sexual harassment does not violate a detainee or inmate's constitutional rights." *Jane Doe 5 v. Caty of Haltom City*, 106 F. App'x 906, 908 (5th Cir. 2004). In the public school context, at least two district courts in this circuit have held that students failed to allege a

---

[3] As explained below, Bright invokes the state-created danger theory of liability. However, "the state created danger doctrine ... is properly understood as a caveat to the color of state law requirement," *Barber v. Overton*, 496 F.3d 449, 453 (6th Cir. 2007), not § 1983's constitutional deprivation requirement. *See Gray v. Univ. of Co. Hosp. Auth.*, 672 F.3d 909, 928 (10th Cir. 2012) ("[A]n increased risk is not *itself* a deprivation of life, liberty, or property."). The Court further notes that in a separate filing, Bright seems to argue that Chandler may be held liable under § 1983 for a violation of Doe's Title IX rights. *See* Doc. #72 at 8–10. However, numerous courts have held that a plaintiff "cannot state a claim under § 1983 based on an underlying violation of Title IX." *Wilkerson v. Univ. of N. Tex.*, 223 F.Supp.3d 592, 608 (E.D. Tex. 2016).

[4] As explained above, the parties agree that the Fourteenth Amendment claims sound in due process, not in equal protection, as pled by the complaint. "The federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits." 5 FED. PRAC. & PROC. CIV. § 1219 (3d ed.) (internal footnote omitted). Accordingly, reference to the wrong constitutional provision is not fatal to Bright's claims. However, to the extent the complaint purports to assert equal protection claims, such claims are deemed abandoned.

constitutional deprivation where the allegations were "limited to inappropriate and offensive verbal comments." *Herndon v. College of Mainland*, No. G-06-286, 2007 WL 2142087, at *5–6 (S.D. Tex. July 25, 2007); *Webb ex rel. Webb v. Splitek*, No. 00-CA-03267, 2001 WL 1910567, at *3 (W.D. Tex. Sep. 28, 2001).

Here, the post-attack allegations relied on by Bright relate only to non-physical sexual harassment. Because the Fifth Circuit has refused to hold that verbal sexual harassment amounts to a constitutional deprivation, the Court concludes that such harassment did not deprive Doe of a substantive due process right and that, therefore, the § 1983 claims premised on such harassment must fail.

### B. Under Color of State Law and Caused by State Actor

As noted above, Bright seeks to hold the moving defendants liable for the harassment of Doe under the state-created danger theory of liability. The moving defendants argue that Bright did not plead the state-created danger theory of liability and that the theory is not viable in the Fifth Circuit.

#### 1. Reference to state-created danger

Rule 8(a)(2) of the Federal Rules of Civil Procedure merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Recently, the United States Supreme Court made clear that the "[f]ederal pleading rules ... do not countenance dismissal of a complaint for [an] imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014). In the wake of *City of Shelby*, there can be no dispute that "precise statements of legal theories are not required." *Johnson v. PPI Tech. Servs., L.P.*, 613 F. App'x 309, 313 (5th Cir. 2015); *see Chessie Logistics Co. v. Krinos Holdings, Inc.*, __ F.3d __, No. 16-4257, 2017 WL 3484547, at *5 (7th Cir. Aug. 15, 2017)

10

(plaintiff is "not required to plead its legal theories").

Here, the moving defendants seek to preclude assertion of a state-created danger theory of liability on the ground that such theory was not specifically pleaded in the amended complaint. This argument is rejected as inconsistent with *City of Shelby*.

### 2. Substantive due process and state-created danger theory

The Due Process Clause of the Fourteenth Amendment directs that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. In *DeShaney v. Winnebago County Department of Social Services*, the United States Supreme Court held that "[a]s a general matter … a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." 489 U.S. 189, 197 (1989). Accordingly, when a plaintiff asserts a claim premised on the conduct of non-state actors, the plaintiff must show that the defendant had a duty to protect the plaintiff from the non-state actors, and that it violated such a duty. *Id*. at 197–200.

Under *DeShaney*'s precedent, a duty to protect "may exist if there is a special relationship" between the state actor and the plaintiff. *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 855 (5th Cir. 2012). However, "a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors." *Id*. at 857. A plaintiff seeking to impose a duty on a public school then must rely on the state-created danger theory of liability. *See id*. at 863–64.

The state-created danger theory derives from the following language in *DeShaney*:

> While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all ....

*Id.* at 863–64 (quoting *DeShaney*, 489 U.S. at 201) (emphases omitted). Relying on this language, courts have held that, "a state actor may be liable under § 1983 if the state actor created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation." *Id.* at 864.

### 3. State-created danger in Fifth Circuit

While an en banc Fifth Circuit in *Covington* noted that "many circuits" have recognized the existence of a state-created danger theory of liability,[5] it declined to adopt the theory. 675 F.3d at 863. Since *Covington*, "[s]ubsequent panels have 'repeatedly noted' the unavailability of the theory." *Doe v. Columbia-Brazoria Indep. Sch. Dist. ex rel. Bd. of Trs.*, 855 F.3d 681, 688 (5th Cir. 2017) (quoting *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1002 (5th Cir. 2014)); *see Paraza v. Sessions*, 680 F. App'x 345, 347 (5th Cir. 2017) (alien raising state-created danger challenge to his removal order "failed to allege a valid constitutional challenge"). Based on this authority, numerous district judges in this circuit have dismissed claims premised on a state-created danger theory. *See, e.g., Little v. Miss. Dep't of Pub. Safety Bureau of Narcotics*, No. 1:16-cv-48, 2017 WL 2999141, at *9 (N.D. Miss. July 13, 2017) ("[A] Fourteenth Amendment due process claim based on a state-created danger theory is not cognizable in the Fifth Circuit."); *Residents Against Flooding v. Reinvestment Zone No. 17*, No. H-16-1458, 2017 WL 1901660, at *45 (S.D. Tex. May 9, 2017) ("For years the Fifth Circuit has clearly stated that it has not recognized a state-created danger claim .... This Court refuses to do the contrary.");

---

[5] Since *DeShaney*, the Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits have recognized the existence of the state-created danger theory. *See Kennedy v. City of Ridgfield*, 439 F.3d 1055, 1061 n.1 (9th Cir. 2006) (collecting cases); *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015). The Eleventh Circuit has held that "'the special relationship' and 'special danger' doctrines were superseded by the Supreme Court" in *Collins v. City of Harker Heights*, 503 U.S. 115 (1992), such that a court need only ask whether "the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). While the First Circuit "has discussed the possible existence of the state-created danger theory, [it has] never found it applicable to any specific set of facts." *Irish v. Maine*, 849 F.3d 521, 526 (1st Cir. 2017).

*Rideau v. Keller Indep. Sch. Dist.*, No. 4:10-cv-926, 2012 WL 12885087, at *3 (N.D. Tex. Jan. 31, 2012) ("Given the Fifth Circuit's repeated unwillingness to adopt the state-created-danger theory of liability, this Court concludes that it lacks a license to pioneer that theory's acceptance."); *Henderson v. Rep. of Texas Biker Rally, Inc.*, No. 1-15-cv-392, 2015 WL 6829514, at *6 (W.D. Tex. Nov. 6, 2015) ("Fatal to Plaintiff's [state-created danger] argument ... is the fact that the Fifth Circuit has repeatedly refused to adopt the state-created danger theory of liability.").

Against the weight of this authority, Bright offers nothing but a cite to *Covington* and the statement that "[w]hile the Fifth Circuit has never embraced the state-created danger theory, it has not formally rejected it and, in fact, has established elements of proof." Doc. #52 at 4. Bright makes no argument why Fifth Circuit (or Supreme Court) authority would justify adoption of the state-created danger theory. In the absence of such argument or authority, the Court declines to recognize a theory of liability which the Fifth Circuit has repeatedly declined to adopt. *See generally TGIP, Inc. v. AT&T Corp.*, 512 F.Supp.2d 696, 712 (E.D. Tex. 2007) ("Courts have consistently held that inadequate briefing results in a waiver of a party's argument.") (collecting cases). Accordingly, Bright's § 1983 claims against the District and Chandler must fail.

## V
## Leave to Amend

"In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). While this rule is normally stated in the context of Rule 12(b)(6) motions, it applies to Rule 12(c) dismissals as well. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644–45 (6th Cir. 2003) (district court abused its discretion by dismissing under Rule 12(c) with prejudice); *Pinto v. Microsoft Corp.*, No. 12-60509, 2012 WL 4479059, at *3 (S.D. Fla. Sep. 28, 2012) (collecting cases).

Here, the Court cannot say that the defects identified in this order are incurable or that Bright is unwilling or unable to amend in a manner that will avoid dismissal. Accordingly, the dismissals of Count III and Count IV will be without prejudice.

## VI
## Conclusion

For the reasons above, the amended motions to dismiss, or in the alternative, for judgment on the pleadings filed by Chandler [45] and the District [47] are **GRANTED**. Count III and Count IV of the amended complaint, as asserted against Chandler and the District, are **DISMISSED without prejudice**. Within fourteen (14) days of the filing of this order, Bright may file a second amended complaint reasserting her § 1983 claims against Chandler and the District. The joint motion to dismiss filed by Chandler and the District [43] is **DENIED as moot**.

**SO ORDERED**, this 11th day of September, 2017.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**